IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEDRO FIGUEROA, | ) | |
|     Petitioner, | ) | Civil Action No. 11-31 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| BUREAU OF PRISONS, et al., | ) | |
|     Respondents. | ) | |

## OPINION AND ORDER[1]

Pending before the Court is a petition for a writ of habeas corpus filed by Pedro Figueroa pursuant to 28 U.S.C. § 2241. He is challenging a disciplinary action taken against him when he was incarcerated at the Federal Correctional Institution ("FCI"), Fort Dix, New Jersey, in which he was found to have committed the prohibited act of Assaulting Another (Minor), in violation of Code 224. Petitioner alleges that he was denied his due process rights because: (1) he did not receive his incident report until four days after the staff member who had accused him of the violation had reported the incident; and, (2) he was not permitted to call a witness (his cellmate) during the Discipline Hearing Officer ("DHO") hearing. As relief, he seeks an order directing that his incident report be expunged so that he may be restored the good time credit he lost as a sanction.

For the reasons set forth below, the Court will deny the petition.

### I.

**A.**   **Relevant Factual Background**

Petitioner is a federal prisoner who is currently housed at FCI McKean, which is located within the Western District of Pennsylvania. On November 6, 2009 (while he was at FCI Fort Dix), he was

---

[1]   In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment.

issued an incident report for Possession of a Hazardous Tool, in violation of Code 108, and for Assaulting Another (Minor), in violation of Code 224. The Reporting Officer was R. Santiago, and he described what occurred as follows:

> On 11-6-2009 at approximately 01:00 AM in room 304 inmate Figueroa #56594-066 stood up out of his bed B03-042L at the same time that [his cellmate] that was in the room push [sic] me out of the way and ran out of the room. During this time inmate Figueroa #56594-066 also push [sic] me out of his way with the back of his hands, holding a cell phone in his right hand running out of the room down the hallway into the stair well. Operations Lieutenant and the compound officer were notified. Inmate Figueroa #56594-066 was escorted to the Lieutenant's office.

(Incident Report, ECF No. 14-3 at 14).

The incident report was written by staff on November 6, 2009, and it was delivered to Petitioner four days later, on November 10, 2009. (Id. at 14-15). Petitioner denied committing the charged infractions. (Id. at 15). Lt. C. Lewars, the investigating staff member, determined that "there is insufficient evidence to substantiate a code 108 due to the fact the cell phone staff stated he observed was never recovered[,]" but he did recommend that the charge related to the minor assault (Code 224) of Officer Santiago proceed to the next phase of the disciplinary process. (Id.)

The Unit Discipline Committee ("UDC") hearing was held on November 12, 2009, and the UDC referred the charges to the DHO for further hearing. Petitioner advised BOP staff that he wanted to call his cellmate to testify at his DHO hearing. (Notice of DHO Hearing, ECF No. 14-3 at 19).

In his Affidavit In Support of Habeas Corpus, Petitioner states that the following occurred regarding his DHO hearing, which was presided over by Anthony Boyce:

> 3.   On November 23, 2009 the … DHO came to the segregated housing unit and *interviewed myself and my cell mate [name redacted] who was charged with the same offenses*.
>
> 4.   During the interview I explained to the DHO what transpired on the night of November 6, 2009; and that was that officer R. Santiago came to my room and woke me

2

and my cell mate up … out of our sleep, at which time he ordered us out of our beds and demanded to search us, … at which time we complied with such order.

5. After searching each of us, officer R. Santiago ordered myself and [my cellmate] to stand outside of the room and face the wall while he searched the room.

6. Approximately fifteen to twenty minutes passed and a Lt. Wright approached the scene with two officers while myself and [my cellmate] was facing the wall; at which time I requested that Lt. Wright provide me with my sneakers because I was barefoot and the floor was cold and he did so.

7. Following my request officer R. Santiago exited the room and asked Lt. Wright to speak to him privately because it was a sensitive matter having to do with a possible cellphone.

8. Upon officer R. Santiago and Lt. Wright's return[ ] the two remaining officers were ordered to escort myself and my cell mate to the lieutenant's office; at which time we were placed in segregation for a possible minor assault on staff and possible possession of a cellphone.

9. *Upon hearing my side of the incident the DHO suspended the hearing for lack of evidence and in order to retrieve the medical report of R. Santiago.*

10. *On December 4, 2009, the DHO hearing resumed*, at which time officer R. Santiago's medical report was presented, and the DHO indicated that the report suggest[ed] that R. Santiago suffered a bruised shoulder.

11. During the hearing I explained that nobody touched officer R. Santiago so how is this possible. The DHO responded that somebody touched him and you guys are guilty of something. I then asked the DHO what was the date and time of the medical report and he stated 15 minutes after the incident. I never received a copy of the medical report, however, I explained to the DHO that this was impossible because Lt. Wright and the two assisting officers did not reach the scene until fifteen to twenty minutes after the described incident. And if this is the case, why did it take nearly a month to get the medical report; the DHO did not respond to my question.

12. I further questioned the DHO as to my medical report and whether mine indicated any injuries and he stated no; and then I asked him was it possible for officer R. Santiago to have a bruised shoulder and I sustained no injuries at all; at this time the DHO said he was throwing the violation of Code 108 out because there was not a cell phone or even a description of a cell phone, but you['re] going to wear the 224 because my officer had a bruised shoulder.

13. I further denied such an offense ever took place and requested that I be provided with my witness … my cellmate who would attest to the very things which I stated. The DHO denied my request and told me to get him on appeal.

3

(Pet's Aff. at ¶¶ 3-13, ECF No. 7-1 at 1-2).

On December 23, 2009, DHO Boyce issued his Report. In it, he noted that Petitioner had requested that his cellmate be called as a witness. The cellmate was listed as having testified and Boyce summarized the statement that the cellmate gave as follows:

> [the cellmate] stated "He came in and searched me and he told me to stand by and he called on the radio and said I have a possible cell phone. He told me to stand outside and face the wall while he finished searching the area. He then called over the radio and said he had a cell phone. The lieutenant came down he came out and told the lieutenant he had a talk and then came back and the lieutenant said escort me to the lieutenant's office."

(DHO Report, ECF No. 14-3 at 24).

Boyce concluded that the greater weight of the evidence, which included Officer Santiago's medical report, demonstrated that Petitioner had violated Code 224, Assaulting Another (Minor). As part of the sanctions Petitioner received, he was disallowed 27 days of good conduct time. (Id. at 25-26).

Petitioner administratively appealed the DHO's decision. He asserted, as he does here, that the incident report should be expunged because it was not delivered to him within 24 hours of the November 6, 2009, incident, and because his request to have his cellmate testify at the December 4, 2009, hearing was denied. (Central Office Administrative Remedy Appeal, ECF NO. 14-3 at 6-7).

Petitioner's administrative remedy appeal was denied. It was explained to him that BOP staff are to provide a copy of an incident report "ordinarily within 24 hours of the time staff became aware to the inmate's involvement with the incident[,]" and that the delivery of his Incident Report was delayed approximately four days "due to staffing issues." (Regional Director's Response, ECF No. 14-3 at 11-12). It was further explained to Petitioner that:

> Although in your case you did not receive such written notice within 24 hours, there is no evidence the delay had an adverse [effect] on your ability to be advised of and defend yourself against the charges prior to the hearing. The 24 hour notice requirement does

> not impact a Due Process element of the inmate discipline process. There is no requirement that the delay must cause the incident report to be expunged.
>
> You contend your requested witness was not called to the DHO hearing. Review of the record reveals the person you called as a witness appeared at the hearing and provided testimony.

(Central Office Response, ECF No. 14-3 at 8).

Thereafter, Petitioner commenced habeas proceedings in this Court by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [ECF No. 6] and an accompanying brief [ECF No. 7]. Respondents have filed their Answer [ECF No. 14], to which Petitioner has filed a Reply [ECF No. 16].

**B.     Subject Matter Jurisdiction**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute[.]" Cardona v. Bledsoe, — F.3d — , No. 11-2396, 2012 WL 2335864, *2 (3d Cir. June 19, 2012) (quoting Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)). "Two federal statutes, 28 U.S.C. §§ 2241 & 2255, confer federal jurisdiction over habeas petitions filed by federal inmates." Id.[2] "The 'core' habeas corpus action is a prisoner challenging the authority of the entity detaining him to do so, usually on the ground that his predicate sentence or conviction is improper or invalid." McGee v. Martinez, 627 F.3d 933, 935 (3d Cir. 2010) (citing Leamer v. Fauver, 288 F.3d 532, 542 (3d Cir. 2002)). That type of habeas action is brought under 28 U.S.C. § 2255, which permits a federal prisoner to challenge his sentence "upon the ground that [it] was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255. In contrast, § 2241 "confers habeas jurisdiction to hear the

---

[2]     A federal prisoner cannot challenge the conditions of his confinement in that habeas action. He must do so in an action filed pursuant to Bivens v. Six Unknown Names Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

5

petition of a federal prisoner who is challenging not the validity but the *execution of his sentence*." McGee, 627 F.3d at 935 (emphasis added) (quoting Coady v. Vaughn, 251 F.3d 480, 485 (3d Cir. 2001) and citing Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 241 (3d Cir. 2005)).

The U.S. Court of Appeals for the Third Circuit has recognized that "the precise meaning of 'execution of the sentence' is hazy." Cardona, — F.3d at __, No. 11-2396, 2012 WL 2335864 at *2 (quoting Woodall, 432 F.3d at 242). In McGee, the Court of Appeals instructed that "the question to be asked is whether granting the petitioner would 'necessarily imply' a change *to the fact, duration, or execution of the petitioner's sentence*." 627 F.3d at 936. Accordingly, the Court of Appeals has held that "[a] challenge, such as this one, to a disciplinary action that resulted in the loss of good-time credits, is properly brought pursuant to § 2241, as the action could affect the duration of the petitioner's sentence." Queen v. Miner, 530 F.3d 253, 254 (3d Cir. 2008) (*per curiam*) (citations omitted). See generally Brian R. Means, FEDERAL HABEAS MANUAL § 1:29 (June 2012) ("All courts agree that § 2241 is an appropriate vehicle to challenge government action that inevitably affects the duration of the petitioner's custody, such as challenges to administrative orders revoking good-time credits, computation of a prisoner's sentence by prison officials, a right to release on parole, or other equivalent sentence-shortening devices."). But see Cardona, — F.3d at __, No. 11-2396, 2012 WL 2335864 at *4 n.8 (observing in *dicta* that "the Supreme Court's recent opinion in Pepper v. United States, — U.S. —, 131 S.Ct. 1229, 179 L.Ed.2d 196 (2011) calls into question whether an inmate can even bring a habeas claim for an actual loss of good time credits, holding that '[a]n award of good time credit by the [BOP] does not affect the length of a court-imposed sentence; rather, it is an administrative reward 'to provide an incentive for prisoners to compl[y] with institutional disciplinary regulations.' Id. at 1248 n. 14 (internal quotation marks omitted) (quoting Barber v. Thomas, 560 U.S. —, 130 S.Ct. 2499, 2505, 177 L.Ed.2d 1 (2010))".)

6

**C.** **Discussion**

**1.** **Petitioner Has Not Established That He Is In Custody In Violation of the Constitution or Federal Law**

This Court's analysis of Petitioner's due process claim must begin with the Supreme Court's decision in <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974), which is the seminal case concerning the due process rights of federal prisoners during disciplinary proceedings. In that case, the Supreme Court noted that a prisoner's accumulation of good time credits, which can affect the length of his incarceration, may give rise to a constitutionally protected liberty interest. <u>Wolff</u>, 418 U.S. at 556-57. However, the Supreme Court noted further that this does not entitle prisoners to the full panoply of rights afforded a defendant in a criminal prosecution when these credits are forfeited pursuant to a prison disciplinary proceeding. <u>Id.</u> Instead, a prisoner is entitled only to procedures sufficient to ensure that the protected interest (<u>i.e.</u>, good time credit) "is not arbitrarily abrogated." <u>Id.</u> at 557.

In <u>Wolff</u>, the Supreme Court enumerated several procedural safeguards that are required in a prison disciplinary proceeding. The following two are at issue in this case: (1) written notice of the charges *24 hours in advance of the disciplinary hearing*; and (2) an opportunity to call witnesses and present documentary evidence, provided the presentation of such does not threaten institutional safety or correctional goals. <u>Id.</u> at 563-72 (emphasis added).

The BOP also has established regulations that set forth the procedures for disciplinary actions. These regulations track the requirements set forth in <u>Wolff</u>, and in some respects exceed the required process set forth in that case. <u>See</u> 28 C.F.R. §§ 541.10-22 (2009). In relevant part, 28 C.F.R. § 541.15(a) (2009), provides that:

> Staff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, *ordinarily within 24 hours of the time staff became aware of the inmate's involvement in the incident*.

(Emphasis added). Section 541.17(c) (2009) provides, in relevant part, that at the DHO hearing:

> An inmate has the right to submit names of requested witnesses and have them called to testify and to present documents in the inmate's behalf, provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security. The DHO shall call those witnesses who have information directly relevant to the charge(s) and who are reasonably available.

Petitioner has failed to establish that he was denied any process due to him under the Due Process Clause or applicable BOP regulations. It is undisputed that, in accordance with the requirements of Wolff, he received written notice of his charges 24 hours in advance of his DHO hearing. And although he did not receive a written copy of the incident report until four days after the incident, there was no violation of § 541.15(a) because that regulation *does not require* that notice be given within 24 hours. Rather, it instructs that a copy should *ordinarily* be provided within that time period. The short delay in providing Petitioner with a copy of his incident report in this case, apparently due to "staffing issues," does not amount to a violation of BOP regulations.

As for Petitioner's complaint that he was not permitted to have his cellmate testify, the record before the Court demonstrates otherwise. Petitioner may not have been permitted to have his cellmate provide a statement at the continuation of his DHO on December 4, 2009; however, Petitioner's own affidavit establishes that DHO Boyce obtained a statement from the cellmate during the first part of the hearing on November 23, 2009. Thus, since Boyce had heard from the cellmate on that date, there was no need to recall him on December 4, 2009. Moreover, Boyce's report demonstrates that he considered the cellmate's statement in evaluating whether Petitioner had committed the charged infraction.

### 2. The DHO's Determination Was Supported By the Requisite Degree of Evidence

To the extent that Petitioner also is challenging DHO Boyce's finding that he committed the prohibited act at issue, that claim also fails. It is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and the decision must be upheld if there is "some evidence" to support the decision. Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991) (applying Hill standard to federal prisoner's due process challenges to prison disciplinary proceedings). Once the reviewing court determines that there is at least "some evidence" to support the findings of the DHO, the court must reject the evidentiary challenge by the petitioner and uphold the finding of the DHO. Id. "Ascertaining whether [the] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing the evidence." Id. at 455-56.

Reviewing the evidence as recited above, the Court finds that there was "some evidence" to support DHO Boyce's decision. DHO Boyce relied on and credited the statement provided by Officer Santiago in the incident report, as well as his medical record. Boyce determined that the greater weight of the evidence supported the finding that Petitioner committed the prohibited act. He also did not credit Petitioner's statement that he did not commit the violation at issue, and this Court has no authority to review that assessment. Id.

### D. Certificate of Appealability

28 U.S.C. § 2253 codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Federal prisoner appeals from the denial of a habeas corpus proceeding are not governed by the certificate of appealability requirement.

9

United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B). As such, this Court makes no certificate of appealability determination in this matter.

**II.**

For the foregoing reasons, the petition for a writ of habeas corpus will be denied. An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEDRO FIGUEROA, | ) | |
| Petitioner, | ) | Civil Action No. 11-31 Erie |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Susan Paradise Baxter |
| BUREAU OF PRISONS, et al., | ) | |
| Respondents. | ) | |

# **ORDER**

AND NOW, this 5th day of June, 2012;

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus is DENIED. The Clerk of Courts is hereby directed to close this case.

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

cc:    Notice by ECF to counsel of record and by U.S. mail to Petitioner at his address of record